**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| RYAN O'DELL, | : |
| | : |
|     Plaintiff, | : Civil Action No. 23-cv-7744 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| CHASE CORPORATION, PETER R. | : **SECURITIES EXCHANGE ACT OF** |
| CHASE, MARY CLAIRE CHASE, ADAM P. | : **1934** |
| CHASE, THOMAS WROE, JR., JOAN | : |
| WALLACE-BENJAMIN, JOHN H. DERBY, | : **JURY TRIAL DEMANDED** |
| III, CHAD A. MCDANIEL, DANA | : |
| MOHLER-FARIA, THOMAS D. DEBYLE, | : |
| and ELLEN RUBIN, | : |
| | : |
|     Defendants. | : |

---

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Chase Corporation ("Chase or the "Company") and the members Chase's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Chase by affiliates of Kohlberg Kravis Roberts & Co. L.P. ("KKR").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on August 31, 2023 with the United States Securities and Exchange

Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Formulations Merger Sub Corporation ("Merger Sub"), a wholly-owned subsidiary of Formulations Parent Corporation ("Parent"), will merge with and into Chase, with Chase surviving as a wholly-owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on July 21, 2023 (the "Merger Agreement"), each Chase stockholder will receive $127.50 in cash (the "Merger Consideration") for each Chase share owned. Parent and Merger Sub are affiliates of Chase.

3.  As discussed below, Defendants have asked Chase's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Perella Weinberg Partners LP ("Perella Weinberg") in support of its fairness opinion.

4.  It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Chase's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.  Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.  Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9.  Plaintiff is, and has been at all relevant times, the owner of Chase stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Peter R. Chase has served as a member of the Board since 1993 and is the Executive Chairman of the Board.

11. Individual Defendant Mary Claire Chase has served as a member of the Board since 2005.

12. Individual Defendant Adam P. Chase has served as a member of the Board since 2010 and is the President and Chief Executive Officer of the Company.

13. Individual Defendant Thomas Wroe, Jr. has served as a member of the Board since 2008.

14. Individual Defendant Joan Wallace-Benjamin has served as a member of the Board since 2020.

15. Individual Defendant John H. Derby III has served as a member of the Board since 2015.

16. Individual Defendant Chad A. McDaniel has served as a member of the Board since 2016.

17. Individual Defendant Dana Mohler-Faria has served as a member of the Board since 2016.

18. Individual Defendant Thomas D. DeByle has served as a member of the Board since 2019.

19. Individual Defendant Ellen Rubin has served as a member of the Board since 2022.

20. Defendant Chase is a company incorporated under the laws of the Commonwealth of Massachusetts and maintains its principal offices at 375 University Avenue, Westwood, Massachusetts 02090. The Company's stock trades on the New York Stock Exchange under the symbol "CCF."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**A.**     **The Proposed Transaction**

23. Chase, a specialty chemicals company, engages in the manufacture and sale of protective materials for various applications in North America, Asia, the Middle East, Europe, and internationally. It operates through three segments: Adhesives, Sealants and Additives; Industrial Tapes; and Corrosion Protection and Waterproofing. The Adhesives, Sealants and Additives segment offers protective conformal and moisture protective electronic coatings and cleaning

4

solutions; advanced adhesives, sealants, and coatings; polymeric microspheres; polyurethane dispersions; superabsorbent polymers; and cleaning and protection solutions for electronic assemblies. The Industrial Tapes segment provides wire and cable materials; specialty tapes and related products; insulating and conducting materials; laminated durable papers; water-blocking compounds; laminated film foils and cover tapes; and pulling and detection tapes. The Corrosion Protection and Waterproofing segment offers protective pipe-coating tapes and other protectants; polymeric asphalt additives; waterproofing membranes; waterproofing sealants, expansion joints, and accessories; technological products, and tapes and membranes; specialized high-performance coating and lining systems; waterproofing and corrosion protection systems; and pipeline protection tapes and products. The Company serves transportation, appliances, medical, general industrial, cable manufacturing, utilities and telecommunications, and electronics packaging markets, as well as oil companies, gas companies, and water/wastewater utilities. It sells the products through its salespeople, as well as manufacturers' representatives and distributors. Chase was founded in 1946 and is headquartered in Westwood, Massachusetts.

24. On July 21, 2023, the Company announced the Proposed Transaction:

> WESTWOOD, Mass. & NEW YORK--(BUSINESS WIRE)--Chase Corporation ("Chase" or the "Company") (NYSE American: CCF), a leading global manufacturer of protective materials for high-reliability applications across diverse market sectors, today announced that it has entered into a definitive agreement to be acquired by an affiliate of investment funds managed by KKR, a leading global investment firm (as applicable, "KKR"). The all-cash transaction is valued at approximately $1.3 billion, including the assumption of debt.
>
> Under the terms of the agreement, KKR will acquire all outstanding shares of Chase common stock for $127.50 per share in cash, delivering substantial value to shareholders. The transaction value implies a valuation of approximately 13 times trailing-twelve-months EBITDA.

"At Chase, we have always been deeply committed to continuously improving our operating performance while providing an outstanding customer experience. In KKR, Chase has found the right strategic partner with strong cultural alignment combined with the experience and resources to help support our mission and drive future growth," said Adam P. Chase, President and Chief Executive Officer of Chase Corporation.

"Over its nearly 80-year history, Chase has established itself as a leader in highly-engineered protective materials and built a portfolio of trusted brands, while delivering outstanding customer service," said Josh Weisenbeck, a KKR Partner who leads KKR's Industrials investment team. "We look forward to supporting Chase on its next phase of growth through developing exciting new products, executing upon strategic acquisitions, and serving customers in growing end-markets, including critical applications in electronics, fiber optics and electric grid infrastructure."

KKR is making its investment in Chase through its North America Fund XIII. The investment builds on KKR's deep experience investing in industrial businesses with technical, materials science capabilities, including <u>Minnesota Rubber and Plastics</u>, <u>Charter Next Generation</u> and <u>Hyperion Materials & Technologies</u>.

Following the close of the transaction, KKR will support Chase in creating an equity ownership program to provide all employees the opportunity to participate in the benefits of ownership of the Company. This strategy is based on the belief that employee engagement is a key driver in building stronger companies. Since 2011, KKR portfolio companies have awarded billions of dollars of total equity value to over 60,000 non-management employees across more than 30 companies.

**Transaction Approvals and Timing**

The Board of Directors of Chase Corporation (the "Board") has unanimously approved the transaction and recommends that shareholders vote in favor of the transaction. The transaction is expected to close in the fourth quarter of 2023, subject to the receipt of approval from the Company's shareholders and certain required regulatory approvals, as well as the satisfaction of other customary closing conditions. The all-cash transaction is not subject to financing conditions.

6

> Peter Chase, Adam Chase, Mary Chase and the Edward L. Chase Trust, collectively holding approximately 26% of the outstanding shares of Chase Corporation common stock, have entered into a support agreement pursuant to which they have agreed, among other things, to vote their shares in favor of the transaction.
>
> Once the transaction is complete, Chase will be a privately held company wholly owned by an affiliate of KKR's investment funds and will no longer have its common stock listed on any public market.
>
> \* \* \*
>
> **Advisors**
>
> Perella Weinberg Partners LP and Davis Polk & Wardwell LLP are serving as advisors to Chase. KKR is advised by Goldman Sachs and Kirkland & Ellis LLP.

\* \* \*

25. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Chase's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

26. On August 31, 2023, Chase filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed

decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

27. The Proxy Statement fails to provide material information concerning financial projections by Chase management and relied upon by Perella Weinberg in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Perella Weinberg with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Chase management provided to the Board and Perella Weinberg. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBITDA, NOPAT, and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics *and/or* a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

29. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate

8

suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

31. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Perella Weinberg's Financial Analyses*

32. With respect to Perella Weinberg's *Selected Public Company Comparison* analysis, the Proxy Statement fails to disclose: (i) the financial metrics for each company selected by Perella

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

Weinberg for the analysis; and (ii) the basis for applying the range of multiples of 11.0x to 130x to 2023E EBITDA.

33. With respect to Perella Weinberg's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics for each transaction selected by Perella Weinberg for the analysis; and (ii) the basis for applying the range of multiples of 11.0x to 130x to 2023E EBITDA.

34. With respect to Perella Weinberg's *Sum of the Parts Analysis*, the Proxy Statement fails to disclose the basis for applying the ranges of multiples to apply to 2023E EBITDA of 12.0x to 14.0x for the Company's adhesives, sealants, and additives segment, 8.0x to 10.0x for the Company's industrial tapes segment, and 9.0x to 11.0x for the Company's corrosion protection and waterproofing segment.

35. With respect to Perella Weinberg's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal value for the Company; (ii) the inputs and assumptions underlying the range of perpetual growth rates of 1.5% to 2.5%; (iii) the inputs and assumptions underlying the discount rates ranging from 9.0% to 10.00%; and (iv) the weighted cost of capital of the Company.

36. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

39. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

40. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

41. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

42. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of Chase within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Chase, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Chase, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Chase, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

47. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 31, 2023                                  **MELWANI & CHAN LLP**

                                                        By:  */s/ Gloria Kui Melwani*
                                                              Gloria Kui Melwani (GM5661)
                                                              1180 Avenue of the Americas, 8th Fl.
                                                              New York, NY 10036

                                                _____

Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*